**UNITED STATES of America,
Plaintiff,**

v.

**PEOPLES BANK OF STAFFORD et al.,
Defendants.**

**Civ. A. No. 353–73–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

March 1, 1974.

Robert L. Ashbaugh, Asst. U. S. Atty., Alexandria, Va., for plaintiff.

Gordon B. Gay, Fredericksburg, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

LEWIS, District Judge.

The facts in this case are not in dispute—On March 17, 1971, one Lee G. Snellings had an installment loan account with Peoples Bank of Stafford secured by a 1971 Ford automobile, together with his authorization for the bank to charge the installments when and as due to his checking account in the bank.

On September 3rd an appropriate official of Internal Revenue Service assessed Snellings some $7,745.81 for unpaid federal wagering taxes. Due notice was given and demand for payment was made—The matter was somewhat publicized in the Fredericksburg press, caus-

ing the bank to have some qualms in re the aforesaid Snellings installment loan.

Notice of the tax lien was recorded in the Spotsylvania County Courthouse at 3:53 p. m. on September 7, 1971 and in the Fredericksburg Courthouse on September 9, 1971.

On September 7th, between 3:30 and 4:00 p. m., IRS telephoned the bank to learn whether Snellings had an account in the bank and, if so, whether they could come over that afternoon and leave some papers—The lady in the bank who answered the telephone said the bank was closed and everybody was getting ready to go home and that she would have to check with one of the officers. After talking to a bank officer she returned to the phone and told the IRS agent that he would have to come by the next morning.

Whereupon, officials of the bank got in touch with Snellings, told him about the IRS call, and wanted to know where the automobile was. When told that it was in Texas, the bank told him that that was a breach of his loan agreement and that he would have to pay the balance due on the loan or they were going to apply the money in his checking account to his installment loan account whether he consented to it or not.

Instead of consenting to it, Snellings wanted to take his money out of the checking account—This the bank would not let him do.

The bank official returned immediately to the bank and had appropriate papers prepared applying $2,147.00 of the money then in Snellings' checking account to his installment loan account, leaving a balance due on the loan of $1,337.64—The amount remaining in the checking account was $31.87. The transfer is recorded on the bank records as of September 7, 1971—It was actually made that afternoon or the next morning before the bank opened for business.

As soon as the bank opened for business on September 8th and IRS agent personally served notice of the Snellings levy on one of the vice presidents of the

bank—Shortly thereafter, to wit, on September 16th, the bank forwarded the remaining $31.87 in the Snellings bank account to IRS.

Some time later IRS seized Snellings' Ford automobile and sold it at public auction subject to the bank's chattel mortgage, at which time the bank was paid the balance of its lien.

The Government brought this suit to compel the bank to pay IRS the $2,147.-00 it had credited to Snellings' loan account, plus a fifty per cent penalty and six per cent interest from the date of the levy.

The bank defends on the ground that it was a holder of a security interest (26 U.S.C. § 6323(h)(1) and (h)(2))—and that it did not have actual notice or knowledge of the existence of the tax lien prior to September 8, 1971 (§ 6323(b)(1)(B)).

From the facts here found it is clear that IRS did not serve the notice of levy until after the bank had credited the money in Snellings' checking account to his installment loan account—It is true that an IRS agent told the bank about it on the telephone on September 7th after the bank was closed—It is also true that the bank assumed from what was said that IRS would be out the next morning to perfect its tax lien—It is also true that this telephone conversation is what prompted the bank to contact Snellings and to credit the money in his checking account to his installment loan account that afternoon.

■ Title 26 U.S.C. § 6323 provides that the tax lien imposed by § 6321 shall not be valid against the holder of a security interest until the subsection (f) notice has been filed—"Filing" as used in this statute surely means more than a telephone call.

■ IRS did not question the right of the bank to claim the loan was in default when the automobile was taken out of the State or that the bank had the right to transfer the money in the checking account to Snellings' installment loan account—They claim that § 6321 gives the Government a lien on all of Snellings' property, real and personal, and that the bank had no right to make the transfer from the checking account after they received the phone call from the IRS agent.

They were given every opportunity to cite sections of the Revenue Code and any other authorities they had in support of their contention—They elected to stand on § 6321 of the Revenue Code.

Section 6323(a) provides that the lien imposed by § 6321 shall not be valid as against any holder of a security interest until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate—A telephone notice hardly meets the requirements of this section.

Further, the bank claims it had a perfected lien against the automobile and the checking account before assessment —notice of assessment—or service of the notice of the levy—pursuant to the terms of its chattel mortgage and the taxpayer's permission to charge his checking account. See United States v. Pioneer American Insurance Company, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), and United States v. Harris, 249 F.Supp. 221 (WD La.1966).

Under Harris the IRS claim was defeated even though the set-off occurred after the notice of levy had been served.

Had IRS served the notice of levy instead of calling the bank they would have avoided the situation complained of.

For the reasons stated, the Court is of the opinion that the above styled matter ought to be dismissed, and

It is so ordered.